## CHARLES WEEKS *et al.* v. WM. A. WHITE.

HOMESTEAD LAW — *Ejectment* — *Plaintiff Entitled to Possession.* A plaintiff in ejectment, whose title is derived from a person holding the duplicate receipt of the receiver of the land office for land taken under the provisions of the homestead laws of the United States, is entitled to recover the possession of a part of the land described in the receiver's receipt from a party in possession, who claims it by virtue of a contract made with a homesteader prior to the time when the title was acquired from the government.

### Error from Rooks District Court.

EJECTMENT, by *White* against *Weeks* and two others. Judgment for plaintiff, on July 19, 1887. The defendants bring the case here. The opinion states the facts.

*C. W. Smith,* for plaintiffs in error.

*A. G. Hardesty,* and *W. A. Fallas,* for defendant in error.

Opinion by SIMPSON, C.: This was an action in ejectment, commenced in the district court of Rooks county on the 4th day of November, 1886, by the defendant in error against the plaintiffs in error, to recover the possession of one acre of ground in the northwest corner of the northeast quarter of section 35, township 9, of range 18, particularly described by metes and bounds. The quarter-section of land was originally taken under the provisions of the homestead act, by one James McCarty, who had entered into a verbal agreement with Markham & Byers, whereby they were to have the possession of the acre of land for the purpose of erecting a store building, and conducting a general mercantile business. He also agreed with them that when he obtained the title to the quarter-section of land from the government, he would convey them the acre upon which their building was located. McCarty relinquished his homestead rights in favor of Dr. P. M. Frisbie, who took possession of the land and occupied it as a homestead under the laws of the United States. When Frisbie obtained the possession, he found Markham & Byers

in possession of the acre of land, and they had constructed a building thereon. It is alleged that a part of the consideration of the relinquishment of McCarty in favor of Dr. Frisbie, was, that Frisbie should continue the agreement with Markham & Byers. After this the plaintiff in error, Weeks, purchased the building of Markham & Byers, and such possessory interest as they might have in the acre of ground, and Weeks sought out Frisbie and entered into the same agreement with him that Markham & Byers had with McCarty. Weeks went into possession of the building and the acre of land in 1879, and was in possession at the time this suit was instituted. In the meantime Dr. P. M. Frisbie died, leaving a widow, M. C. Frisbie, and certain adult children. Under the provisions of the congressional homestead law, the widow is granted the right to take the land as a homestead, and she, at the proper time, made application to the local land office to prove up on this quarter-section of land. She obtained a final receipt from the land office. Her right to make such proof was contested by Chas. Weeks by way of a protest, because before this time she had denied that Weeks had any right in the acre of land, and had refused to recognize the validity of her husband's agreement with Weeks. Before the commencement of this action, Mrs. Frisbie had commenced an action of unlawful detainer against Weeks before a justice of the peace. This case was tried before the justice, then appealed to the district court, and there decided against her. At the time this action was commenced, the protest of Weeks against her right to make final proof of the homestead was on file in the general land office, and was undetermined. After obtaining the final receipt, Mrs. Frisbie conveyed the acre of land in controversy to Wm. A. White, who brings this action.

The trial was had in July, 1887, before a jury. After all the evidence had been heard, the court instructed the jury that upon the law and evidence in this case, the plaintiff, W. A. White, was entitled to a verdict in his favor. The jury returned a verdict in favor of White, and a judgment was rendered in his favor for the recovery of the possession of the

acre of ground.    There are numerous exceptions saved to the rulings of the trial court, on the admission and rejection of evidence; to the overruling of the demurrer of the defendants below to the plaintiff's evidence; and to the overruling of the motion for a new trial.

I. It is not disputed by counsel for plaintiffs in error but that this court has decided in the cases of *Brake v. Ballou,* 19 Kas. 397, and *Mellison v. Allen,* 30 id. 382, that a contract made for the sale of land being held under a homestead entry under the act of congress is void, if the contract is entered into prior to the time of acquiring title thereto by the homesteader.    It is also conceded that a court of equity would refuse to enforce the specific performance of such a contract.    It is claimed, however, that this is not such a case; that the pivotal question is here: "Have Weeks and family any such interest in this land, by reason of their occupancy of it, as will be respected, recognized and enforced by the courts of this state?"    We say not.    From the record it appears that Weeks made such an agreement with Frisbie in his lifetime, as Markham & Byers had with McCarty, and this court says that no such agreement can be made, and hence Weeks acquired no right to the possession of the land by virtue of such a promise by Frisbie.    The utmost that can be said in favor of Weeks is, that he received permission of Dr. Frisbie to occupy this acre of land; that his occupation was a permissive one, and even this is of very doubtful validity.    If it was intended to be temporary, it might be sustained; if a permanent occupancy was intended, whether exclusive or subordinate to that of Frisbie, it could not be sustained in accordance with the scope and effect of the decisions of this court.    It would be but a pretense; it would call a sale permanent occupancy; it would violate the spirit, if not the letter of the congressional homestead law.    It may be safely asserted that Markham & Byers, or Weeks, obtained no interest in the land or no legal right of occupancy of it by these agreements with McCarty and Frisbie that they could enforce, or that they could assert in defense to any action brought to dispossess them.    See the

very recent cases of *Whittaker v. Pendola*, 20 Pac. Rep. 680, decided by the supreme court of California, and *U. P. Rly. Co. v. Kennedy*, 20 id. 696, decided by the supreme court of Colorado.

II. It is said that this land was not subject to homestead entry by Dr. Frisbie; that at the time he took possession of it, he found Markham & Byers, the vendors of Weeks, who succeeded to all their rights, in the sole possession and exclusive occupancy of this acre of land. And as they were in possession claiming an interest, and as he had agreed to recognize their rights, he did not take the land for his own exclusive benefit as the act of congress requires, and hence the rule laid down by the supreme court of the United States in the cases of *Atherton v. Fowler*, 96 U. S. 513; *Hasmer v. Wallace*, 97 id. 575; *Worth v. Branson*, 98 id. 118; *Quinby v. Conlan*, 114 id. 420; and *Grower v. Fletcher*, 116 id. 380, applies. The rule announced in these cases is this: "That no right of preëmption can be established by a settlement and improvement on public land where the claimant forcibly intruded upon the possession of one who had already settled upon and improved the land."

These cases have no bearing upon the questions discussed in this case. Weeks is not claiming an independent right as a homesteader to this acre of land; he claims in subordination to the rights of Dr. Frisbie. The theory of counsel for the plaintiffs in error must be, that Mrs. Frisbie succeeded to the rights and is bound by the agreements of her husband in his lifetime respecting this homestead. We think this is a mistaken view of the homestead act. She takes in her own right at the death of her husband, and not as his heir. If he had the legal right to obligate himself with respect to the possession of any portion of his homestead — and this is very doubtful — all his agreements ceased with his death. The widow with adult children, who then has the best right to take the land as a homestead, takes it independently and for herself, and is not bound by any agreements her husband made in his lifetime respecting it. As long as there is a dispute about the

possession of a tract of government land as a preëmption or homestead right, or as long as there is a contest over or dispute about whether the title to a tract of land has passed from the government, all such questions are primarily to be determined by the federal authorities; but when the title once passes from the government, all questions about possession, and all subsequent questions about title, are for the determination of the courts of the state within which the land is situate. The usual duplicate receipt of the receiver of the land office is declared by our statute to be proof of title equivalent to a patent against all but the holder of an actual patent. (Code, § 383.) Mrs. Frisbie has such a receipt, and this provision of the code cannot be evaded or suspended by proof of an agreement such as was entered into between Frisbie and Weeks, or by the assertion of a contest as to whether Mrs. Frisbie had the right to subject this quarter-section to a homestead entry. We give the receipt the legal effect declared by the code, and the inevitable result is, and must necessarily be, that the grantee of the holder of the receipt must prevail in an action to recover possession against those who rely on such defenses. We think the court instructed the jury right, and that all other alleged errors are immaterial.

It is recommended that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.