No. 26,936.

C. H. BRIGGS, *Appellant*, v. LIBBIE M. RULE et al., *Appellees*.

SYLLABUS BY THE COURT.

1. QUIETING TITLE—*Evidence—Sufficiency.* In an action to quiet title to land, the evidence considered and held sufficient to sustain the judgment.   ·

2. ADVERSE POSSESSION — *Visible, Actual and Hostile Possession.* Where a homesteader's final receipt was issued and duly recorded and the holder thereof or his grantee entered upon the land, surveyed it into lots, streets and alleys and went upon it at various times and exercised dominion over it, such entry was visible, actual and hostile to the rights of a patentee whose patent, although issued before such entry, was not recorded for some twenty years thereafter.

Appeal from Sherman district court; CHARLES I. SPARKS, judge. Opinion filed December 11, 1926. Affirmed.

*E. F. Murphy* and *Elmer E. Euwer,* both of Goodland, for the appellant.
*George D. Freeze,* of Goodland, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to quiet title to a lot in Kanorado. The defendant prevailed and plaintiff appeals.

---

Adverse Possession, 2 C. J. p. 276 n. 59; 15 L. R. A. n. s. 1178; 1 R. C. L. 701. Quieting Title, 32 Cyc. p. 1372 n. 26.

Trial was had on an agreed statement of facts and certain oral testimony. Plaintiff held title through mesne conveyances from one Moseby, patentee. The patent was dated July 19, 1889, and recorded May 23, 1911. The defendant held title through mesne conveyances from the holders of two receiver's receipts both issued by Tulley Scott, receiver of the United States land office at Oberlin, the first to F. M. Crom, guardian of Martin Yocum, sole heir of William Yocum, deceased. It was dated June 5, 1888, recorded June 7, 1888. The land was conveyed by Crom, as guardian, to Libbie M. Rule and John E. Rule, her husband, June 15, 1888. They conveyed an undivided 51 per cent of the land to the Kansas Town and Land Company, the deed being recorded June 23, 1888; on January 7, 1889, a second receiver's receipt was issued to George B. Stevens conveying the same tract of land. This receipt was recorded January 9, 1889. On February 9, 1889, a deed was recorded from Stevens and wife to one Jillson, trustee. On February 27, 1889, Jillson, trustee, conveyed by warranty deed to the defendant, Libbie M. Rule, 49 per cent of the land of which the lot in controversy is a part. On July 5, 1888, the Kansas Town and Land Company, Libbie M. Rule and her husband dedicated and platted their respective interests. On November 21, 1892, the Kansas Town and Land Company conveyed to the defendant its undivided 51 per cent of the lot in controversy, and other lands, the deed being recorded July 6, 1893.

The plaintiff contends that no title ever vested in the defendants or their grantors through the receiver's receipt; that the various conveyances to defendants and their grantors were executed and consummated while the land in question was still government land; that defendants and their grantors were simply trespassers upon public land; that they acquired no title and no rights before or after the issuance of the patent to John M. Moseby. Plaintiff's contention is not sound. The registry of the original homesteader's final receipt is sufficient basis for title. (R. S. 60-2865; *Weeks v. White,* 41 Kan. 569, 21 Pac. 600; *Buckwalter v. School District,* 65 Kan. 603, 67 Pac. 831; *Spaeth v. Kouns,* 95 Kan. 320, 148 Pac. 651.)

There was evidence showing that the defendants and the Kansas Town and Land Company entered upon the land, surveyed it into lots, streets and alleys. Such entry was visible, actual and hostile to the right of the patentee Moseby. There was evidence that the

Briggs v. Rule.

defendants exercised possession and dominion over the property by going upon it and offering it for sale and that they paid the taxes thereon. Their title was not questioned until Moseby quitclaimed whatever interest he had in the land by virtue of his patent, May 23, 1911. Adverse possession had been taken by defendants July 5, 1888, and while such possession may be said to have been meager it was sufficient to start the running of the statute of limitations, which was not interrupted by any act by the plaintiff or his grantees during the fifteen-year period which expired July 5, 1903. (See R. S. 60-304, 4th clause; *Anderson v. Burnham,* 52 Kan. 454, 34 Pac. 1056; *Dickinson v. Bales,* 59 Kan. 224, 52 Pac. 447; *Finn v. Alexander,* 102 Kan. 607.)

There was evidence that plaintiff began paying taxes on the lot in controversy about 1908; that he paid other taxes in subsequent years; that he took actual possession of it about the time of the recording of the patent and the deed to him in 1911 and that he built a fence on one side of it in 1916 or 1917. There was also evidence that the defendants paid the taxes of 1922, and that the fence mentioned was not on the lot in controversy. While the possession of plaintiff under claim of ownership was adverse to the rights of the defendants, it was not open, notorious and exclusive for a sufficient length of time (15 years) to ripen into title. Other than as stated, it would serve no useful purpose to detail the evidence. The final receipts on which defendants and their grantors based their title, together with the actual possession of the property originally assumed by them, ripened into a good title which was not afterwards cut off by the recording of the patent and the assuming of possession by the plaintiff.

Various questions are raised, all, however, pertaining to the questions discussed. The record discloses no error.

The judgment is affirmed.

HARVEY, J., dissenting.